to a gun on the day of the crime. (N.T. 12/15/97 pg. 160). It was thus imperative to the prosecution that Copper be found by the jury to be credible.

During trial, and immediately before Copper took the stand, the Commonwealth was specifically asked by counsel if this witness had a prior record and whether or not she was being paid. (N.T. 12/12/97 pg. 150-155). The defense indicated that if either were true they intended to cross-examine the witness on these circumstances and furthermore request a jury instruction that such witnesses must be viewed with caution. (Id. pg 155).

The Commonwealth, however, unequivocally represented as an Officer of the Court to the defense and the judge that "she has no criminal record" and that she was paid "zero." (Id. pg. 152, 155). Based on these representations, both defense counsel chose not to cross-examine Copper on these issues and her direct testimony was received unchallenged by the jury.

Petitioner, however later learned that in an unrelated federal trial held on May 20, 1998 involving Bowers, that the government had been aware long before Petitioner's trial that Copper sold crack cocaine since 1990, was an occasional user of marijuana, and perhaps most importantly, had been a paid government witness for years. She had acted as an undercover informant starting as early as 1994 and continuing for a period of years. During this time Copper had been paid a total of approximately $8,000 and had been given a car. *U.S v.*

*Thomas Hall and Malik* Bowers, No. 96-403-1-4 (N.T. 5/20/98 at 12, 22-24,33-34).

This withheld evidence thus reveals that Copper had a very strong motive to lie on behalf of the Commonwealth. The jury in this case should have been made aware of this bias and motive before it deliberated on her testimony. The Commonwealth's failure to disclose the above evidence so undermined the truth-determining process that no reliable adjudication at either trial or during the penalty hearing could have taken place. 42 Pa. C.S. § 9543(a)(2)(i).

The Commonwealth's failure to disclose the above favorable evidence, individually and cumulatively, denied Petitioner his clearly established constitutional rights to due process and fair trial as set forth in *Brady*, supra; *Bagley*, supra; *Giglio, supra; Pelullo*, supra and *Perdomo*, supra. Petitioner avers that the state court decision which denied relief on the basis that he could not demonstrate prejudice, is contrary to' clearly established federal law in that it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result.'" *Lambert v. African Americanwell* , 387 F.3d 210, 234 (3d Cir. 2004) (quoting *Williams v. Taylor* , 529 U.S. 362, 405-06 (2000)).

Petitioner averred in his P.C.R.A. Petition that his trial/direct appeals' counsel was constitutionally ineffective

for failing to independently investigate the decedent, Hall and Copper and for failing to timely raise, preserve and later assert on direct appeal the above cited *Brady* violations. *Strickland*, supra.

When as here, the state courts reject an ineffectiveness claim by finding a lack of prejudice, but say nothing about the reasonableness of what the lawyer did, the reviewing federal court must apply a *de novo* standard to the prejudice prong of ineffectiveness claim. *Rompilla, supra*.

It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. *U.S  v. Bayne,* 622 F.2d 66, 69 (3d Cir. 1980); *U.S  v. Williams*, 615 F.2d 585, 594 (3d Cir.1980)). This duty to investigate is especially exacting in a capital case, where "counsel' s duty to investigate all reasonable lines of defense is strictly observed." *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997)

Despite the fact that counsel obviously knew that challenging the veracity and reliability of these witnesses was essential to the defense, counsel failed to conduct an adequate independent investigation. The information pertaining to Hall's and Haynes was contained in their respective Quarter Sessions files. Had counsel merely subpoenaed Copper's FBI files, it would have been immediately apparent that she was a government informant.

Counsel' s reliance on nothing more than cross-examination fell far below the minimum standards of competence. Counsel' s failure to properly investigate and present the above cited substantial and compelling evidence constituted deficient performance falling below the standard required of a defense attorney, much less one handling a capital case such as this. Petitioner avers that there could be no objectively tactical basis for failure to raise this claim. However, as set forth elsewhere herein, this Court cannot find any tactical basis for counsel's actions existed in that there was never a hearing held where counsel was so questioned before he died. Without any tactical basis on the record, this Court cannot now invent or hypothesize as to the existence of any tactical basis.

Counsel's ineffectiveness compromised the inherent reliability of the verdict. Petitioner accordingly avers that he is entitled to appropriate relief.

**C.    Petitioners Constitutional rights under the Sixth and Fourteenth Amendments were violated when the defense investigator Edward Geigert had a conflict of interest.**

Investigator Ed Geigert (Geigert) was retained by Petitioner's counsel, with court funding, to investigate the case. He was also privately retained and paid to investigate the case on behalf of co-defendant, Bowers in the instant case *and*

another open homicide, the Tracy Postell murder, where both
Bowers and Petitioner were again co-defendants.

Geigert, as an agent of both defense counsel, had
unfettered access to interview each defendant, their witnesses
and their family members. As the investigator for both
Petitioner and Bowers, Geigert had the inherently conflicting
obligation to investigate and gather any evidence which would
possibly vindicate *either* of these defendants during the guilt
phase of the trials.

Petitioner avers that the joint investigation constituted
an actual conflict of interest and that the conflict of interest
affected the investigator's performance, depriving the
Petitioner of a fair trial and sentencing.

The state court admitted that where an 'actual' conflict of
interest exists, prejudice is presumed. They then however ruled
that they would not however extend that presumption of prejudice
on the part of an *investigator* (as opposed to counsel) in the
absence of any "concrete indication thereof". (*Commonwealth v.
Simpson*, 66A.3d 253 (2013) pg. 9). Petitioner avers that the
state court ruling "was based on an unreasonable determination
of the facts in light of the evidence presented in the state
court proceeding" and that it is contrary to clearly established
federal law. *Lambert,* supra*; Williams,* supra*.

Petitioner avers that contrary to the state court ruling, the right to conflict free counsel and the presumption of prejudice necessarily and logically extends to those individuals employed by counsel, including private investigators. *Von Moltke v. Gillies*, 332 U.S. 708, 725 (1948). *National Aeronautics and Space Administration v. Federal Labor Relations Authority*, 527 U.S. 229, 119 S.Ct. 1979, 144 L.Ed.2d 258 (U.S. 06/17/1999) (parent agency who employs investigator are responsible for ensuring no conflict of interest.).

Under the Sixth Amendment a defendant is entitled to effective assistance of counsel, which inherently includes the right to the conflict free loyalty of his counsel. *Strickland*, supra; *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980). In order to be effective, counsel also has the constitutional duty to conduct a reasonable investigation on behalf of his client. *Wiggins v. Smith*, 539 U. S. 510 (2003); *Rompilla*, supra. In order for the investigation to be objectively reasonable, counsel must ensure that the investigation is not effected to any degree by a conflict of interest. If counsel retains an investigator who has a conflict of interest, counsel's actions cannot be said to be effective.

In that prejudice is presumed when counsel has an actual conflict of interest, prejudice should be similarly presumed when counsel retains someone on his defense team who has an

actual conflict of interest.  *U.S. v. Stantini*, 85 F.3d 9, 15 (2nd Cir. 1996); *Strickland*, supra; *Cuyler*, supra. Petitioner is entitled to relief under the "unreasonable application" clause in that even if the state court correctly identified the governing legal principle from the Supreme Court's decisions, it unreasonably refused to extend that principle to a new context – an investigator employed by counsel– where it should apply. *Greene supra*; *Williams, supra*.

Even assuming arguendo that prejudice was not presumed, there was sufficient evidence from which the state courts could have found prejudice. *Glasser v. U.S.* 62 S. Ct. 457, 315 U.S. 60 (U.S. 01/19/1942)(Prejudice found where the conflict of interest caused 'diminished usefulness'). In this regard, Petitioner contends that the state court ruling unreasonably applied the law to the facts of the particular case, entitling him to habeas relief. *Greene, supra; Williams, supra; Lowry, supra; Schriro, supra.*

One of the critical issues at trial was which defendant actually committed the murder. The Commonwealth's evidence was circumstantial and did not clearly point to one defendant or the other. For example, while there was testimony that Petitioner made phone calls regarding the purported ransom, there was also evidence that the gun found in Bowers' possession on a different date was similar to one used in the kidnapping and assault in

this case. Similarly, the Commonwealth admitted other crimes evidence as to Bowers regarding the purchase of guns and as to the Petitioner regarding a purported prior bad act (unreported assault). The above evidence theoretically would have allowed either defendant to point the finger at the other defendant. In fact, the prosecutor admitted during closing argument that that he (and presumably the jury) still did not know who the actual shooter was, where the murder took place or what gun was used. (N.T. 12/15/97, pg. 121, 125, 160, 164).

In a case such as this where the co-defendant's had conflicting defenses, it was impossible for Geigert to fulfill his ethical duty to both clients simultaneously. What was potentially 'good' evidence for one client would likely be inculpatory evidence for the other. Geigert was thus faced with an unsolvable ethical dilemma.

Geigert's actual conflict prevented Petitioner's counsel from pursuing a "plausible alternative defense strategy" which would have pointed directly to the role of Bowers in the murder. *Stantini*, supra; *Winkler v. Keane*, 7 F3d 304, 309 (2rd Cir. 1993); *U.S. v. Gambino*, 864 F.2d 1064, 1071 (3rd Cir. 1988).

Accordingly, Petitioner avers that the state court ruling that there was no prejudice was objectively unreasonable. 28 U.S.C.§ 2254(d)(2); G*reene, supra; Williams, supra.* The general presumption of correctness related to the State courts' factual

128

findings do not apply this mixed questions of law and fact such as this. *Cunningham v. Diesslin*, 92 F.3d 1054 (1996); *Wellman v. Maine* 962 F.2d 70 (1992); *Levasseur v. Pepe* 70 F.3d 187, 1934.

**D.    Petitioners Constitutional rights under the Fifth, Sixth and Eighth Amendments were violated when counsel failed to object to the trial court's admission of other crimes evidence and/or failed to request that the jury be given an immediate curative instruction and to preserve and raise the claim on direct appeal.**

During the guilt phase of the trial the Commonwealth introduced evidence that the Petitioner had purportedly been involved in a prior attempted kidnapping, robbery and assault of a prosecution witness, Hall. The prosecution's evidence of this prior bad act was Hall's self-serving testimony that six weeks prior to the instant crime Petitioner had approached him with a gun and attempted to force him into his own home in order to rob him. (N.T. 12/11/97 pg. 21-22, 48-57).

Prior bad act testimony is only admissible under exceptional circumstances to show 1) motive, 2) intent, 3) absence of mistake or accident, 4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others 5) to establish identity and 6) *modus operandi*. *Commonwealth v. Morris*, 499 A.2d 1080 (Pa. 1981). Before other crimes evidence may be admitted against an accused, the prosecution must first

establish by proffer of "substantial" evidence that the crime actually occurred. *Commonwealth v. Donohue*, 549 A.2d 121 (Pa. 1988).

Prior bad acts testimony is generally inadmissible because of the significant danger that the jury will use the evidence to conclude that a defendant was a person of bad character and acted, at the time of the offense, in conformity with that character. *Commonwealth v. Bordell*, 110 A.2d 193, 195 (Pa. 1955). In fact, state courts have held that prior crimes evidence is "probably only equaled by a confession in its' prejudicial impact on the jury." *Commonwealth v. Spruill*, 391 A.2d 1048 (Pa. 1978).

Petitioner averred that his counsel was constitutionally ineffective under the Sixth Amendment for failing to object to the admission of this evidence and for failing to request that an immediate curative instruction be given. Counsel's omissions violated Petitioner's right to due process of law and a fair trial in that it rendered the verdict unreliable.

The evidence was inadmissible in that there was not a *substantial* evidentiary basis to prove that six weeks prior to the crime this incident occurred at all. *Donohue*, supra. The Commonwealth bore the burden of proof, yet there was not even a proffer of any witnesses who were either present during the alleged kidnapping/assault or who observed Hall afterwards who

could corroborate Hall's testimony. There was no police report because it had never been reported by Hall to the police. Petitioner had not been charged with any crime related to it. Clearly, the evidence in support of admission was not 'substantial'. *Donohue*, supra

The case at bar is factually similar to *Commonwealth v. Fortune*, 346 A.2d 783 (Pa. 1975). In that case the court found that paucity and vagueness of the detail and the absence of corroboration resulted in undue prejudice. Petitioner avers that the state court finding that there was not the same paucity and vagueness of detail in the case at bar is an unreasonable determination of the facts. *Greene, supra; Williams, supra; Lowry, supra; Schriro, supra*.

The evidence was also inadmissible in that the Commonwealth had not met their burden of proving that the probative value of the evidence outweighed its' prejudicial effect. *Commonwealth v. Holloman*, 621 A.2d 1046, 1049 (Pa. Super. 1993). The state court found the prior bad acts were admissible as "part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts." (P.C.R.A Court Opinion, pg. 7).

Contrary to the state court finding, the prior bad act evidence was never described or argued by the Commonwealth as part of any sequence of events all leading to the instant crime.

The prior bad act was an isolated incident six weeks before. There was absolutely no evidence of any common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the other' as required. Thus, there was no probative value to this evidence.

Moreover, the prejudicial impact far outweighed the probative value of the evidence. It made the Petitioner out as a violent individual who had threatened a Commonwealth witness. It made them automatically and thereafter, to view the Petitioner and his defense with suspicion and likely fear. Thus, the prior bad acts evidence should not have been admitted. The state court finding that the objectionable testimony was more probative than prejudicial was contrary to and an unreasonable of the facts of evidence in the record. *Greene, supra; Williams, supra; Lowry, supra; Schriro, supra.*

However, even if the prior crimes evidence was somehow admissible, Petitioner avers that his counsel was still ineffective for failing to request an *immediate* cautionary instruction be given. *Commonwealth v. Billa*, 555 A.2d 835, 841 (Pa. 1989); *Commonwealth v. Amos*, 284 A.2d 748, 750 (Pa. 1971). It is reversible error not to give this instruction on the limited purpose for which it was permitted. A mere passing and general reference, particularly as here, in the *closing*

instructions cannot cure the error and an *immediate* curative instruction is necessary. *Billa*, supra.

The reason for an immediate instruction is clear: the risk of improper use by the jury is too great to conform with fundamental principles of due process under the Fourteenth Amendment. In addition, the risk of the jury's improper use of this evidence during the penalty phase of the proceedings was significant. *Commonwealth v. Fisher*, 681 A.2d 130, 148 (Pa. 1996). There is more than a reasonable likelihood that the jury improperly considered this evidence in reaching the guilt and sentencing determination, prejudice is established and the failure to provide proper instructions undermined the truth-determining process to the degree that no reliable adjudication of either the guilty or penalty phase could have taken place.

Counsel could not have had any tactical basis for failing to object and/or at least request the immediate cautionary instruction. Counsel had a duty to object and preserve any claim that the jury may have relied on inadmissible and highly prejudicial evidence particularly in a capital case such as this. Counsel could have done so privately, at side bar. He could have requested the curative instruction at the same time. If the objection was denied, the jury would be none the wiser, yet the issue would ave still been preserved. Capital counsel must err on the side of caution and at all times make reasonable

efforts to preserve any meritorious issues. As discussed
elsewhere and incorporated herein, given the fact that counsel
is deceased and no hearing was held in state court, this court
cannot guess at the existence of any tactical basis for
counsel's omissions.

Petitioner accordingly avers that the state court ruling
denying relief on the basis of lack of prejudice is contrary to
clearly established federal law including but not limited to
*Strickland*, supra.

    **E.**    **Petitioners Constitutional rights under the Sixth,
Eighth and Fourteenth Amendments were violated when
the trial court gave a defective 'reasonable doubt'
instruction and trial counsel ineffectively failed to
timely object and otherwise preserve the claim for
direct appeal.**

The Sixth, Eighth and Fourteenth Amendments prohibit the
criminal conviction of any person except upon proof beyond a
reasonable doubt of every fact necessary to constitute the crime
with which he is charged." *U.S. v. Gaudin*, 515 U.S. 506, 510
(1995); *In re: Winship* 397 U.S. 358, 364 (1970).

> Reasonable doubt is not an easy concept to understand,
> and it is all the more difficult to explain. Moreover,
> given the concerns about crime that are so prevalent
> in today's society, common sense suggests that it
> is particularly difficult for lay jurors to understand
> that they must acquit a criminal defendant if the
> prosecution does not establish guilt beyond a
> reasonable doubt, even if they feel that the defendant
> is probably guilty. Jurors may well be reluctant to
> free someone accused of a serious and violent crime
> "merely" because the government didn't prove beyond a
> reasonable doubt what they feel "in their hearts" is

>           probably true. Yet, due process is satisfied by
>           nothing less than a juror's understanding that he or
>           she may not vote to convict a defendant based upon a
>           belief "that the defendant is probably guilty. . . .

*Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993).  As a result,

the reasonable doubt jury charge is perhaps one of the most

important charges given to a jury.

A federal court may conduct habeas review of state jury

instructions in those instances, such as here, where the

instructions violated a Petitioner's due process rights. *Echols*

*v. Ricci,* 492 F.Appx. 301, 312 (3d Cir. 2012). "In reviewing

whether a District Court in its charge to the jury correctly

stated the appropriate legal standard, our review is plenary."

*U.S  v. Johnstone*, 107 F.3d 200,  204 (3d Cir. 1997).

Moreover, the federal court has authority to review the state

court determination that counsel was not ineffective under the

Sixth Amendment for failing to object to the improper charge.

*Strickland*, supra.

In the case at bar, during the guilt phase of the case, the

court gave a defective jury instruction on reasonable doubt. It

advised the jury that:

>           A reasonable doubt is a doubt that would cause a
>           reasonably careful and sensible person to hesitate
>           before acting upon a matter of importance in his or
>           her own affairs. It must be an honest doubt arising
>           out of the evidence itself, the kind of doubt that
>           would **restrain** a reasonable person from acting in a
>           matter of importance to himself or herself.

(emphasis added)(N.T. 12/16/97, pg. 9-10). The trial court again specifically referred to and relied on this instruction a second time during the penalty phase proceedings. (N.T. 12/19/97 pg. 115).

This instruction was however constitutionally infirm and violated Petitioner's due process rights. The instruction was both inaccurate and confusing. It mislead the jury in a material way. Jury instructions, taken as a whole, must "clearly articulate the relevant legal standards" and "avoid confusing and misleading the jury." *Johnstone,* supra; *U.S v. Hernandez,* 176 F.3d 719 (3d Cir. 05/17/1999).

The Standard PA Jury Instruction provides that a jury be informed that a reasonable doubt is a "doubt that would cause a reasonably careful and sensible person to *hesitate* before acting upon a matter of importance in his own affairs." PA. Standard Jury Instruction Criminal Section §7.01(3)(1979). The distinction between '*hesitate*' and '*restrain*' is, however, significant.

Common synonyms for 'hesitate' are 'pause', 'delay', or 'waiver'. On the other hand, synonyms for 'restrain' are 'refrain', 'prevent', 'restrict', 'limit' and 'control'. 'Hesitate' implies a "pause or other sign of indecision *before acting.*" 'Restrain' on the other hand suggests "use of force, pressure, or strenuous persuasion to hold back a person or thing

136

from a course of action or to prevent the action itself."
Webster's Third New International Dictionary.

Under the trial court's improper 'restrain' instruction,
the doubt would have to rise to such a great level that it would
not just cause a reasonable person to 'hesitate' before acting,
but would instead require an affirmative act to actually prevent
the act.

> When an attack upon a jury charge is based upon the
> trial court's instruction on reasonable doubt, '(t)he
> constitutional question . . . is whether there is a
> reasonable likelihood that the jury understood the
> instructions to allow conviction based on proof
> insufficient to meet the (constitutional) standard."
> Id. "It is axiomatic that '(t)he Due Process Clause
> requires the government to prove a criminal
> defendant's guilt beyond a reasonable doubt,'
> therefore, 'trial courts must avoid defining
> reasonable doubt so as to lead the jury to convict on
> a lesser showing than due process requires.'

*Hernandez,* supra (quoting *Victor* at 22).

In order to be constitutional, the jury charge must impress
". . . upon the fact-finder the need to reach a subjective state
of near certitude of the guilt of the accused, (because) the
(reasonable doubt) standard symbolizes the significance that our
society attaches to the criminal sanction and thus to liberty
itself." *Jackson v. Virginia*, 443 U.S. 307 (1979).

The U.S. Supreme Court has not yet addressed whether the
"restrain from acting" formulation used above is
unconstitutional. *Victor v. Nebraska*, 511 U.S. 1, 5 (1994).

Comparing the "hesitate to act" instruction with the "restrain from acting" formulation, the U.S. Supreme Court held that they were however, inclined to agree that the latter places a lower burden of proof on the prosecution. "Accordingly, defining reasonable doubt as such a doubt that would "restrain" one's actions decreases, to some extent, the burden of proof that the prosecution would have to meet were the "hesitate to act" formulation employed instead. The U.S. Supreme Court did not however, go so far as to find that the instruction was *per se* unconstitutional.

While admitting that the U.S. Supreme Court has explicitly approved the 'hesitate' instruction in *Victor*, the state court contradictory found that there was no more than a *de minimis* distinction between the meaning of the words.

Petitioner avers that the instruction was more like *Cage v. Louisiana*, 498 U.S 39, 40 (1990) which the Supreme Court found was unconstitutional. In *Cage*, the Court reasoned that "the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard." Id. at 41. Like *Cage*, the words 'restrain' as it is in present day used, suggests a higher standard than 'hesitate'.

Petitioner avers that a reasonable juror could have interpreted this instruction to allow a finding of guilt based

138

on a degree of proof below that required by the Due Process Clause." Id.

Petitioner further avers that counsel ineffectively failed to timely object to the jury instruction both during the penalty and the guilty phases of the trial. Counsel additionally failed to raise and argue this claim on direct appeal. *Strickland,* supra.

Petitioner was prejudiced by counsel's ineffectiveness. Counsel's omissions unconstitutionally permitted the jury to reduce the Commonwealth's burden of proof both at trial and sentencing. This infringed on the presumption of innocence, violating Petitioner's Sixth, Eighth and Fourteenth Amendment rights. Petitioner avers that but for counsel's deficient performance, the jury would have found reasonable doubt and the outcome of the trial and sentencing would have been different.

While counsel has no obligation to see into the future and predict a change in the law, counsel does have an obligation to his client, particularly in a capital case, and particularly when dealing with such a fundamental instruction to preserve a potentially meritorious claim with the understanding that the law evolves. In that the U.S. Supreme Court had not yet heard and decided a case challenging the above cited jury charge language, any reasonably cautious attorney would have at least attempted to preserve the claim.

Counsel could have had no objectively reasonable tactical basis for not objecting to a deficient instruction on such a fundamental aspect of a verdict. In that counsel failed to timely object and given that trial counsel also served as direct appeals counsel, this claim could only be raised on collateral appeal.

**F.     Petitioners Constitutional rights under the Sixth, Eighth and Fourteenth Amendments were violated when due to trial court error and counsel's ineffectiveness, Petitioner waived his right to sever the penalty phase hearing from that of his co-defendant, Bowers, depriving him of individualized sentencing.**

The Eighth Amendment requires that a capital defendant's sentencing proceedings allow for "precise and individualized sentencing." *Stringer v. Black*, 503 U.S. 222, 230 (1992); *Lockett v. Ohio*, 438 U.S 568, 605 (1978); *Zant v. Stephens*, 462 U.S. 862, 879 (1983). While this does not mean that severance of co-defendants sentencing hearings in all cases are always required. It is however necessary in situations where the "jury could be put in a position to balance one defendant off against the other with regards to their culpability and participation in the crime" or where there is a risk that one defendant's mitigating evidence "could in fact translate into aggravating information with respect to the other defendant. *U.S. v. Catalan-Roman*, 376 F. Supp. 2D 96, 106, 107 (D.P.R. 2005).

The joinder of the sentencing trials in the case at bar forced the jury to weight each of the defendants mitigating evidence against each other to determine which defendant deserved mercy more. Bowers family testified that he had an unsettled and dysfunctional childhood, thereby giving the jury reasons to explain why Bower's subsequent involvement in the crime. On the other hand, the jury heard only that Petitioner came from a "normal" family. There is a reasonable likelihood that the jury would be less inclined to be merciful toward the Petitioner when compared against Bower's mitigation evidence. In other words, the mitigation presented on behalf of Bowers resulted in non-statutory aggravation as to the Petitioner.

Moreover, the (e)(7) mitigating circumstance (the defendant's participation in the homicidal act was relatively minor") requires a weighing by the jury of the comparative culpability of the co-defendants. This directly violates the constitutionally required 'individualized determination' at sentencing.

Conducting joint penalty phase proceedings under these circumstances created an impermissible risk that the jury would be unable to give each defendant the individualized consideration required by the Eighth Amendment. Arbitrary and capricious capital sentencing and/or the risk that a death sentence will be based on impermissible or irrelevant factors

will not be permitted. *Gregg v. Georgia*, 428 U.S. 153, 189 (1976); *Zant v. Stephens*, 462 U.S. 862, 885 (1983).

The state court held that there was no error because the Petitioner, through his counsel, advised the court that he wished to proceed to the penalty phase hearing with his co-defendant. (P.C.R.A Opinion, pg. 7). The Pennsylvania Supreme Court affirmed the P.C.R.A. Court on the basis that Petitioner did not explain how he was improperly advised by counsel. "Absent presentation of such erroneous advice, (Petitioner) cannot prevail on this ineffectiveness claim." (*Commonwealth v. Rasheed Simpson*, 66 A.3d 253 (2013) pg. 10). Petitioner avers that this conclusion is not supported by the facts of record and is in fact contrary to the facts of record. The state court finding was based on an unreasonable application of the facts to the law. *Greene, supra; Williams, supra; Lowry, supra; Schriro, supra.*

Petitioner specifically averred and argued in his P.C.R.A. Petition and on appeal to the Pennsylvania Supreme Court that his attorney *never even offered Petitioner the option* of having a severed penalty phase. Rather, the choice offered by the trial court was a separate penalty phase hearing from his co-defendant but both before the same jury. This was effectively no choice at all. The result is the same. The Court cannot 'unring the bell' once that evidence is placed before the jury, regardless of the

142

order in which it is presented. The trial court's offered remedy wold not have cured the prejudice or constitutional error.

Moreover, Petitioner averred that even *assuming arguendo* there was a waiver, it was not knowing, intelligent and voluntary. Counsel was ineffective for failing to ensure that Petitioner be colliquied on the record by the Court to ensure he understood what he was waiving. Nor did counsel ensure that Petitioner was aware of the potential negative consequences of proceeding in a joint penalty hearing as opposed to separate trials.

Had counsel timely objected to the joint penalty phase hearings, there is a reasonable likelihood that the Court would have been disposed to conduct separate penalty hearings. Had this been done, Petitioner contends that the jury would not have played one defendant's culpability and mitigation evidence against the others'.

Petitioner avers that there could be no objectively reasonable tactical basis for counsel failing to object. However, in that the P.C.R.A Court failed to conduct a hearing and counsel is now deceased, there can now never been a basis placed on the record. Neither the state nor federal courts are permitted to hypothesize or infer the existence of a potential tactical basis for counsel's omission. As a result, it must be

presumed in the absence of any evidence to the contrary that
counsel had not tactical basis for his omission.

**G. Petitioners Constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments were violated when counsel ineffectively failed to object to the trial court's instructions on the nature of aggravating and mitigating circumstances which prevented the jury from considering and giving full effect to the relevant mitigating evidence.**

At the beginning of the penalty phase the Court instructed

the jury as to aggravating and mitigating circumstances:

> Now, loosely speaking, members of the jury,
> aggravating circumstances are things about **the killing
> and the killer** which make a first degree murder case
> more terrible and thus deserving of the death penalty.
> While mitigating circumstances are those things which
> make **the case** less terrible and less deserving of the
> death penalty.

(emphasis added)(N.T. 12/18/97 pg. 10). The Court further

instructed the jury just prior to their deliberation that:

> The sentencing code defines aggravating circumstances
> and mitigating circumstances, and as I previously told
> you, they are things that make a first degree murder
> **case** either more terrible or else less terrible.

(emphasis added)(N.T. 12/19/97 pg. 114).

The trial court emphasis on "things that make the case more

terrible or else less terrible" restricted the jury's

consideration of mitigating evidence regarding Petitioner's

character or criminal record - not the "terribleness" of the

crime. Evidence of the Petitioners upbringing, character and

relationship with others has nothing whatsoever to do with the "terribleness" of the crime. It describes the Petitioner, _not_ the crime. The jury, however was clearly instructed to look for evidence about "the killing or the killer that made "_the case more terrible_" or "things which made _the case_ less terrible."

Furthermore, while the jury was instructed that evidence about the killer could make the case _more_ terrible, they were _not_ conversely instructed that evidence about the defendant could make the crime _less_ terrible, and could accordingly, be considered as mitigating circumstances.

The Eighth Amendment requires the jury to consider and give full mitigating effect not only any relevant mitigating evidence related to the circumstances of the offense, but also to any aspect of the defendant's character, background or record that could justify imposing a lesser sentence. _Woodson v North Carolina_, 428 U.S. 280 (1976); _Lockett v. Ohio_, 438 U.S. 586, 604 (1978); _Eddings v. Oklahoma_, 455 U.S. 104 (1082); _Hitchcock v. Dugger,_ 481 U.S. 393, 394 (1987); _Skipper v. South Carolina_, 476 U.S.1, 4 (1986). It is settled law that a capital jury is required to consider factors about _the defendant_, not just factors that make an offense or the case itself more of less "terrible". Thus, the instruction given to the jury in Petitioner's case, precluded them from giving full weight or

effect to the little mitigation evidence which was presented at sentencing.

The state court held, as it did related to all the other jury instruction claims, that there was no related ineffective assistance of counsel in that the instruction given was 'verbatim' consistent with the Standard Pennsylvania Instructions. (*Commonwealth v. Rasheed Simpson*, 66 A.3d 253 (2013) pg.12). Petitioner contends that the state court decision was contrary to, or involved an unreasonable application of the above federal law clearly established by the Supreme Court and on an unreasonable application of the facts to the law. *Greene, supra; Williams, supra; Lowry, supra; Schriro, supra.*

The Pennsylvania Supreme Court admitted that the P.C.R.A. Court was simply wrong when it held that the language used in the instant charge was taken 'verbatim' from the Standard Pennsylvania Instruction.(*Commonwealth v. Rasheed Simpson*, 66 A.3d 253 (2013)pg. 12).

The Supreme Court erred however in ruling that the language that was used in the instruction at issue was 'close enough' to be constitutionally acceptable. This is an erroneous finding in that the Pennsylvania instruction does not place _any_ emphasis on the "terribleness of _the case_". The instruction given is not anywhere near close in meaning to the actual language of the

Standard Instruction. Moreover, when the charge literally is the basis for the jury to decided between giving the defendant life or death, 'close enough' is not good enough to satisfy due process of law.

Petitioner avers that his counsel was constitutionally ineffective for failing to object to the improper jury charges, thereby waiving the claim on direct appeal. *Strickland*, supra. Counsel was an experienced criminal defense attorney. He had to have known that the jury charge that was given was infirm. It was an instruction that is given in every capital case. If counsel didn't know that the language that was used violated his client's rights he had no business trying capital cases and this Court must find that his performance fell below the norm expected of capital counsel.

As with the other claims of ineffective assistance, in that the P.C.R.A Court failed to order a hearing and now trial counsel is deceased, it is not possible to conclude that there was any objectively reasonable tactical basis for counsel's failure to object to the charges. The Court cannot hypothesize or invent a tactical reason for counsel's ineffectiveness.

    **H.** **Petitioners Constitutional rights under the Sixth, Eighth and Fourteenth Amendments were violated when the trial court gave a preponderance of the evidence instruction which prevented the jury from considering relevant mitigating evidence.**

The charge that the court gives on the "preponderance of the evidence" standard is one of the most fundamental and important of all charges that impact on the penalty phase of a capital case. The jury is told that the standard is only met when the jury is convinced that the evidence considered as a whole indicates that the facts existence is more probable/likely than not. "The preponderance of the evidence standard generally puts evidence on an evenly balanced scale." *U.S. v. Montague*, 40 F.3d 1251, 1253-54 (D.C. 1994). The instruction thus requires that the jury understand that they must weigh the evidence on either side of a factual issue, and the side that tips the scales prevails on that issue.

In the case at bar, the trial court gave the jury two very brief instructions during the penalty phase related to this. The Court told the jury: "However, they must *only* prove a mitigating circumstance by a preponderance of the evidence, that is by a greater weight of the evidence." (N.T. 12/19/9 pg. 116). "The Commonwealth must prove the aggravating circumstance by a preponderance of the evidence, that is by the greater weight of the evidence." Id. 127. No further explanation was offered by the Court.

In denying Petitioner relief, the state court found that the two brief instructions which were given were materially

identical to the instruction given in *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167 (1999) and therefore acceptable. The state court reasoned that the "courts instruction that a defendant must only prove mitigating circumstances based on a preponderance of the evidence adequately communicated to the jury that the defendant was subject to a lesser burden of proof regarding mitigating factors." Id.

Petitioner avers that the state court conclusion is contrary to clearly established federal law. The U.S. Supreme Court has held that in *all* capital cases the sentencer must be allowed to weigh the facts and circumstances that arguably justify a death sentence against the defendant's mitigating evidence. *Eddings v. Oklahoma,* 455 U.S. 104, 110 (1982).

The distinction in the burdens of proof that the jury must apply when considering and weighing a mitigating factor against an aggravating factor is not an easily understood concept. Due process therefore requires that the jury be provided with sufficient information for them to be able to ascertain when the defendant's burden had been met before they make a life or death decision.

If the jury is not specifically told what is sufficient to meet the defendant's burden on mitigation, the jury cannot possibly conduct this critical weighing function without being arbitrary and capricious.

The U. S. Supreme Court has:

> . . . long acknowledged that death is fundamentally
> different in kind from any other punishment.
> See *Furman v. Georgia*, 408 U.S. 238, 286-291, 92 S.Ct.
> 2726, 33 L.Ed.2d 346 (1972)(Brennan, J., concurring);
> *Gregg v. Georgia*, 428 U.S 153, 188, 96 S.Ct. 2909, 49
> L.Ed.2d 859 (1976)(joint opinion of Stewart, Powell,
> and Stevens, JJ.). For that reason, we have required
> States to apply special procedural safeguards to
> "minimize the risk of wholly arbitrary and capricious
> action" in imposing the death penalty. *Gregg*, 428
> U.S., at 189, 195, 96 S.Ct. 2909, 49 L.Ed.2d 859
> (1976)(joint opinion of Stewart, Powell, and Stevens,
> JJ.); see also *Ring v. Arizona*, 536 U.S. 584, 614, 122
> S.Ct. 2428, 153 L.Ed.2d 556 (2002)(BREYER, J.,
> concurring in judgment)(explaining that without
> adequate procedural safeguards, "the constitutional
> prohibition against 'cruel and unusual punishments
> (134 S.Ct. 407) would forbid (the) use" of the death
> penalty).

*Woodward v. Alabama*, ___ U.S. ___, 134 S.Ct. 405, 187 L.Ed.2d
449 (U.S. 11/18/2013) .

In the instant case the defective charge did not tell the
jury what it would take for the defendant to meet his burden:
Does the defendant's mitigation evidence have to just 'tip the
scales' or is more required? The jury was not told that the
scale only needed to tip *ever so slightly* to meet the burden.
Moreover, the instant defective instruction came immediately
after the Court instructed the jury on reasonable doubt,
implying that the burden the defendant had was greater to prove
mitigation than what was needed to establish reasonable doubt.

The jury charge that was given at worst, improperly
elevated Petitioner's burden to prove mitigation. At best, it

was hopelessly confusing and unable to be consistently applied
as is required by the Due Process Clause. The relevant inquiry
is one of effect, not form. *Apprendi v. New Jersey*, 530 U.S. 366
(2000); *Ring v. Arizona*, 536 U.S. 584 (2002). The instruction
prevented the jury from considering and giving *full* effect to
mitigating evidence and created an unconstitutional effect on
the jury's finding and weighing of aggravation and mitigation.

Petitioner avers that his trial/direct appeals counsel was
ineffective for failing to object to the above instruction,
thereby waiving it for review on direct appeal. Having denied
relief on the basis that the underlying claim lacked merit, the
state courts did not consider the lack of reasonableness of
counsel's omission. When as here, the state courts rejects an
ineffectiveness claim by finding a lack of prejudice, but says
nothing about the reasonableness of what the lawyer did, the
reviewing federal court must apply a *de novo* standard to the
prejudice prong of ineffectiveness claim. *Rompilla, supra.*

There is no evidence of record of there being any tactical
basis for counsel's omission. It is improper for a court to
invent, suggest or hypothesize as to what counsel may have been
thinking when he allowed the jury to be charged as they were. As
with the other claims based on the jury charge, there could have
been no objectively reasonable tactical basis for counsel to
intentionally permit the jury to make such a fundamental and

important finding based on a lack of understanding of the weighing process.

Petitioner was prejudiced by counsel's ineffectiveness. Prejudice involves more than a determination that the outcome would have been different -- it also involves the concepts of reliability and fairness. *Strickland*, supra. This Court cannot reasonably find that the state court jury verdict of death was, under the circumstances, reliable or fair.

I.   **Petitioners Constitutional rights under the Sixth, Eighth and Fourteenth Amendments were violated when the jury was permitted to 'double count' his one prior conviction to establish two district aggravating factors.**

Petitioner's constitutional rights were violated when the jury was permitted to use the existence of one prior conviction to establish two separate aggravating circumstances. In other words, the jury was allowed to consider two aggravating factors based on the same fact.

The jury found that Petitioner had a "significant history of felony convictions involving the use or threat of violence to the person" 42 Pa.C.S. §9711(d)(9) and that he had been convicted of another murder. 42 Pa.C.S. §9711(d)(11). The finding of these two distinct aggravators was based upon a single occurrence or act – Petitioner's prior conviction for the murder of Darnell Carraway. Petitioner avers that this violated

his constitutional rights under the Sixth, Eight and Fourteenth Amendments.

The Court failed to instruct the jury that it could not base its finding on two or more aggravating circumstances on a single fact, occurrence, or episode. The trial court's failure to instruct the jury against double counting unconstitutionally arbitrarily and capriciously tilted the scales in favor of death. Petitioner avers that it is manifestly unjust to permit this type of double counting.

This is particularly true, when as here, the prosecution intentionally manipulated the process by delaying in bringing the instant capital case to trial until it had already secured a conviction in the Carroway case. As argued more fully elsewhere herein, by delaying the prosecution, the Commonwealth almost certainly guaranteed itself a death verdict in the instant case, knowing that the jury could double count the prior conviction and overcome what little mitigation evidence Petitioner's counsel did present. Moreover, the prejudice was exacerbated by the fact that the "significant history" aggravator was unconstitutionally vague and invalid as applied to the Petitioner as set forth more fully below. When considered from the jury's perspective, the death verdict was a forgone conclusion.

Petitioner avers that his trial counsel was ineffective for failing to object to the instant instruction. As with the other claims based on the jury charge, there could have been no objectively reasonable tactical basis for counsel to fail to object particularly when failing to object to the double counting would almost certainly result in a sentence of death.

The state courts held that the claim lacked merit based entirely upon the ruling in *Commonwealth v. Lesko*, 804 A.2d 625 (Pa. 2002). The state court finding is based on an unreasonable determination of the facts. *Lesko* dealt solely with a question of state statutory interpretation: specifically, whether double counting violated Pennsylvania's constitution and death penalty statute.

Petitioner however also raised and argued this claim based on the Sixth, Eighth and Fourteenth Amendments of the U.S. Constitution as well as the double jeopardy provisions. The concepts of sentencing fairness and justice mandate against allowing the scales to tilt in favor of death violating due process of law and entitling Petitioner to federal habeas review of the underlying jury charge and relief. *Echols, supra.*

In denying relief, the state court did not consider the above claims. They ruled based solely on consideration of state law. Despite being fairly presented to the state courts, they however chose not to address the U.S. Constitutional claims on

their merits. *Baldwin v. Reese*, 541 U.S. 27 (2004); *Anderson v. Harless*, 459 U.S. 4 (1982); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)(per curiam). This claim is ripe for federal review.

Petitioner averred that his trial/direct appeals counsel was ineffective for failing to object to the charge that was given on the basis that it violated Petitioner's due process rights. As set forth above and incorporated herein as if set forth in full, counsel could have had no objectively tactical reason for not at least objecting to the charge that was given. His client's very life was at stake and counsel could have made the objections at side bar or in chambers. Under the circumstances and without the availability of any evidence of record from counsel, this Court should find that counsel was ineffective violating Petitioner's Sixth Amendment rights.

**J.  Petitioners Constitutional rights under the Sixth, Eighth and Fourteenth Amendments were violated in that Pennsylvania's (d)(9)'significant History' of violent felony convictions aggravating circumstance is unconstitutionally vague.**

The U.S. Supreme Court has held that an aggravating circumstance is unconstitutionally vague when "the challenged provision fails to adequately to inform juries what they must find to impose the death penalty and as a result leaves them and appellate courts with the kind of open-ended discretion which was held invalid in *Furman*." *Maynard*, 486 U.S. At 361-362(citing to *Furman v. Georgia*, 408 U.S. 238 (1972).

The jury in the case at bar was instructed that they could find an aggravating circumstance that "(t)he defendant has a 'significant history' of felony convictions involving the use or threat of violence to that person." 42 Pa.C.S. §9711(d)(9). The trial court defined this aggravating factor as follows:

> He must have an **extensive** record of convictions. A **single** previous conviction regardless of the nature and circumstances of the crime does not constitute a significant history. **Two** convictions may but need not constitute a significant history. You should take into account the **number of convictions**, when the crimes were committed and the circumstances of the crimes in determining whether or not there is a significant history. **It's entirely up to you based on the evidence to determine whether a defendant has a significant history of felony convictions.**

(emphasis added)(N.T. 12/19/97 pg. 121). The emphasis on the number of convictions and the final instruction that it was entirely up to the jury to decide what 'significant' meant, rendered the instruction inadequate to clarify what would make a criminal history "significant". Without an adequate instruction defining the term "significant", this aggravating circumstance is unconstitutionally vague and therefore void.

The U.S. Supreme Court has "insisted that the channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action" which violates the Fourteenth Amendment. *Maynard v. Cartwright*, 486 U.S. 356, 362 (1988)(citing *Gregg v.*

*Georgia*, 428 U.S. 153 (1976); *Spaziano v. Florida*, 468 U.S. 447 (1984); *Lowenfield v. Phelps*, 484 U.S. 231 (1988).

Based on the above, multiple state courts have held that an aggravating circumstance based upon a finding that the defendant had a "substantial" or "significant" criminal history is unconstitutionally vague. *Arnold v. State*, 224 S.E. 2D 386 (Ga. 1976); *State v. David*, 468 So.2d 1126, 1129-30 (La. 1984); *Gall v. Commonwealth*, 607 S.W.2d, 111 n.8 (Ky. 1980).

The state court held that there was no merit to the ineffectiveness claim in that Pennsylvania Courts had previously rejected vagueness challenges similar to the Petitioner's and it is not ineffective to decide not to raise a meritless claim. (*Commonwealth v. Rasheed Simpson*, 66 A.3d 253 (2013) pg.14). Petitioner avers that the state court decision applied the incorrect federal standard to the facts and was therefore, contrary to clearly established federal law. *Lambert,* supra; *Williams,* supra.

The state courts relied upon *Commonwealth v. Hill*, 666 A.2d 642, 654 (Pa. 1995). The *Hill* court found that there was no vagueness citing to the U.S. Supreme Court case, *Proffitt v. Florida*, 428 U.S. 242, 257 (1976). Petitioner avers that the state court's reliance on Proffitt was misplaced, in that *Proffitt* involved a void for vagueness challenge to a "no significant history of prior criminal activity" **_mitigating_**

157

circumstance (42 Pa.C.S. § 9711(e)(1)) and _not_ to a "significant criminal history" **aggravating** circumstance. (42 Pa.C.S. § 9711(d)(9)).

Notably, in _Gregg,_ which was decided the very same year as _Proffitt_, the U.S. Supreme Court cited with approval the holding in _Arnold_ which found the _"significant history" aggravating circumstance_ unconstitutionally vague. Petitioner accordingly avers that the state court holding in the case at bar, which was based on the _Hill_ Court's reliance on _Proffitt_ was in error. The analysis and ruling should have been based on the U.S. Supreme Court's ruling in _Gregg,_ which cited with approval the holding in _Arnold_.

Mitigating circumstances are legally different in all aspects than aggravating circumstances. The burdens of proof are very different. Moreover, mitigating circumstances need not have the objective, narrow interpretation that the Constitution requires with regard to aggravating circumstances.

It stands to reason that that the constitutional soundness of a "no significant history" _mitigator_ would also be legally distinct from a "significant history" aggravator and must therefore be _independently_ evaluated for vagueness.

The State court additionally attempted to distinguish Pennsylvania's "**significant** history" aggravator from the "**substantial** history" aggravator found by Georgia in the _Arnold_

Court to be unconstitutionally vague. The state court held that the words "significant" and "substantial" had distinctly different meanings.(*Commonwealth v. Rasheed Simpson*, 66 A.3d 253 (2013) pg. 13-14). See, also *Commonwealth v. Holcomb*, 498 A.2d 833, 853 (Pa. 1985). According to the *Holcomb* Court, "substantial" is a term connoting quantity. On the other hand, "significant" conveys not only the concept of numerosity but also relevance". *Holcomb*, Id.

The average juror would not perceive that the two words were distinct much less had they had specific distinct legal meanings. Contrary to the state court reasoning, the average juror would define "significant" and "substantial" as synonyms as Webster's Collegiate Thesaurus does. 738, 796 (1976). Even if the words had any generally recognizable distinction, an instruction that turns so significantly on a very precise difference in legal meaning between two words that the average juror would have not way of distinguishing must be considered unconstitutionally vague.

Moreover, even under the reasoning of *Holcomb,* the "significant history" aggravating circumstance is unconstitutionally vague. In the case at bar, the jury was instructed on the "significant history" language of the statute and then confusedly told "significant" means "extensive" which meant not one, but maybe two but in any case "its entirely up to

you. . .to determine whether a defendant has a significant history." (N.T. 12/19/97 pg. 121).

Significantly, the jury was _not_ instructed that "significant" conveys not only the concept of numerosity but also 'relevance'. _Holcomb_, Id. The jury was not instructed that it should consider both the "character of the prior convictions and their quantity." _Holcomb_, Id. The jury was not instructed on any of the factors that _Holcomb_ held would "channel the jury's discretion in the application of this aggravating circumstances, thus avoiding constitutional infirmity. _Holcom_b, Id.

Petitioner's sentencing jury was given insufficient guidance with respect to how to define "significant". Trial counsel, who also served as counsel on direct appeal, was constitutionally ineffective for failing to at least object and preserve this claim for appellate review. Counsel could have had no objectively reasonable basis for not at least preserving this claim given that there was a meritorious factual and legal argument to be made. Had counsel objected at trial, there is a reasonable likelihood that the Court would have modified/supplemented the instruction that was given to comport with _Holcomb_.

**K. Petitioners Constitutional rights under the Sixth, Eighth and Fourteenth Amendments were violated when trial counsel ineffectively failed to object to the charge given and failed to request that the jury be**