# IN THE DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RASHEED SIMPSON )
          Petitioner )
  )
  )  U.S.D.C. No.:  15-4510
     v )
  )
John E. Wetzel, Secretary of the )  **THIS IS A CAPITAL CASE**
    Pennsylvania Department of )
    Corrections; Robert Gilmore, )
    Superintendent of SCI Greene and )
    Franklin J. Tennis, Superintendent of )
    SCI Rockview )
  )
          Respondents

---

# ORDER

AND NOW,       this       day of        , 2016, it is hereby

ORDERED AND DECREED that Respondent's Motion to Strike is DENIED.

_____
                                                   J

Teri B. Himebaugh, Esq.
2201 Pennsylvania Ave. #513
Philadelphia, PA 19130
(484) 686-3279
thimebaughesq@earthlink.net
PA ID 53603

# IN THE DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RASHEED SIMPSON                     )
      Petitioner                  )
                           )
                           )  U.S.D.C. No.:  15-4510
      v                          )
                           )  **THIS IS A CAPITAL CASE**
John E. Wetzel, Secretary of the    )
   Pennsylvania Department of        )
   Corrections; Robert Gilmore,      )
   Superintendent of SCI Greene and  )
   Franklin J. Tennis, Superintendent of )
   SCI Rockview                      )

      Respondents

# PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO THE RESPONDENT'S MOTION TO STRIKE

Petitioner, Rasheed Simpson, by and through counsel, Teri B. Himebaugh, Esq. does hereby respectfully submit the instant Memorandum of Law in Opposition to the Respondent's Motion to Strike.

## Background

Counsel was initially retained on Petitioner's behalf solely in relation to the remand hearing in the PCRA court and exhaustion of the claims that raised. When counsel was re-retained to represent the

2

Petition in his federal habeas petition, she calculated the habeas due date and also contacted Shawn Nolan at the Federal Defenders and asked him to confirm her calculation of that date which was December 31, 2015. (P1). In reliance on that date, counsel immediately began the necessary review, research and investigation of the issues that could theoretically be raised in the federal petition. See below.

On July 30, 2015 (five months before that date) an execution order was issued. Counsel conferred with Shawn Nolan at the Federal Defenders and was instructed to file the habeas form/petition with the Grounds as: "Petitioner will identify the claims raised and exhausted in state court and his claims for relief in his forthcoming counseled habeas petition."

Counsel thereupon timely filed a habeas petition as instructed above and a Motion for Stay of Execution which specifically asked for the Court's permission to file Petitioner's Writ of Habeas Corpus within 180 days of the date of the Order. The Order was granted on August 20, 2015. (P2). Based on the Court's Order, the habeas corpus petition was not due until February 16, 2015.

On January 20, 2016, recognizing the need for additional time, counsel asked for an additional 180 days to file the habeas petition. The Court granted this Motion permitting additional time to file the habeas petition despite the statute of limitations having already expired on December 31, 2015.

Counsel received a copy of the March 18, 2016 letter from the Respondents to the Court averring that the habeas petition had to have been filed by December 31, 2015 for the claims to be timely regardless of the Court's Orders expressly extending that date.

## Argument

### I.   The claims are timely based on equitable tolling

The AEDPA time-bar is not jurisdictional. The Circuit Courts have accordingly consistently held that the habeas corpus statute of limitations is subject to equitable tolling in appropriate cases. *Neverson v. Farquharson*, 366 F.3d 32, 41 (CA1 2004); *Smith v. McGinnis*, 208 F.3d 13, 17 (CA2

2000) (per curiam); *Miller v. New Jersey Dept. of Corrections*, 145 F.3d 611, (CA3 1998); *Harris v.*

*Hutchinson*,209 F.3d 325, 329--330 (CA4 2000); *Davis v. Johnson*, 158 F. 3d 806, 810 (CA5 1998);

*McClendon v. Sherman*, 329 F. 3d 490, 492 (CA6 2003); *Taliani v. Chrans*, 189 F.3d 597, 598 (CA7

1999); *Moore v. United States*, 173 F.3d 1131, 1134 (CA8 1999); *Calderon v. United States Dist. Ct.*

*for Central Dist. of Cal.*, 128 F. 3d 1283, 1289 (CA9 1997); *Miller v. Marr*, 141 F.3d 976, 978 (CA10

1998); *Sandvik v. United States*, 177 F. 3d 1269, 1272 (CA11 1999) (per curiam) .

> . . . the "exercise of a court's equity powers . . . must be made on a case-by-case basis."
> *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964). In emphasizing the need for "flexibility,"
> for avoiding "mechanical rules," *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946),
> courts have followed a tradition in which they have sought to "relieve hardships which,
> from time to time, arise from a hard and fast adherence" to more absolute legal rules,
> which, if strictly applied, threaten the "evils of archaic rigidity," *Hazel-Atlas Glass Co.*
> *v. Hartford-Empire Co.*,322 U.S 238, 248 (1944). The "flexibility" inherent in "equitable
> procedure" enables courts "to meet new situations [that] demand equitable intervention,
> and to accord all the relief necessary to correct . . . particular injustices.

*Holland v. Florida*, No. 09-5327 (U.S. 06/14/2010)(citing *Lonchar v. Thomas*, 517 U. S. 314, 323

(1996)). Thus, there is no " inflexible rule requiring dismissal whenever" its "clock has run." Id., at

208; *Day v. McDonough*, 547 U.S. 198, 205 (2006) .

A petitioner is entitled to equitable tolling where he "shows 1) that he has been pursuing his

rights diligently, and 2) that some extraordinary circumstance stood in his way and prevented timely

filing." *Holland v. Florida*, 130 S. Ct. 2549 (2010); *Pace v. DiGuglielmo*, 544 U.S. 408 (2005) ; *Brown*

*v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) ; *Miller v. New Jersey State Dep't of Corr.*,145 F.3d 616,

617 (3d Cir. 1998) .

The U.S. Supreme Court made clear in *Holland* that a non-jurisdictional federal statute of

limitations is normally subject to a "rebuttable presumption" in favor "of equitable tolling." *Holland*,

supra (citing *Young v. United States*, 535 U. S. 43, 49 (2002).

> In the case of AEDPA, the presumption's strength is reinforced by the fact that "
> 'equitable principles' " have traditionally " 'governed' " the substantive law
> of habeas corpus, *Munaf v. Geren*,553 U.S. 674, 693 (2008), for we will "not construe a

statute to displace courts' traditional equitable authority absent the 'clearest command,' " *Miller v. French*, 530 U. S. 327, 340 (2000) (quoting *Califano v. Yamasaki*,442 U.S. 682, 705 (1979))... "(t)he presumption's strength is yet further reinforced by the fact that Congress enacted AEDPA after the Supreme Court decided *Irwin (v. Department of Veterans Affairs*, 498 U.S. 89, 95--96) and therefore was likely aware that courts, when interpreting AEDPA's timing provisions, would apply the presumption.

*Holland*, supra; see also, *Merck & Co. v. Reynolds*, 559 U. S. ___, ___ (2010) (slip op., at 12).

Petitioner avers that he has both pursed his rights diligently and that extraordinary circumstances exist which prevented him from timely filing. *Johnson v. Hendricks*, 314 F.3d 159, 162 (3d Cir. 2002).

*Holland*, supra.

### 1)    **Petitioner pursued his rights diligently**

Due diligence "does not require 'the maximum feasible diligence. *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004); *Fahy v. Horn*, 240 F.3d 239, 244- 45 (3d Cir. 2000); *McKeithan v. Varner*, No. 02-1913 (3d Cir. 08/30/2004) .

The record reflects that Petitioner has pursued his rights diligently both in state and federal court. (P3). *Lacava v. Kyler*, 398 F.3d 271 (3d Cir. 02/11/2005); *Miller v. New Jersey State Dep't of Corr.*,145 F.3d 616, 619 (3d Cir. 1998); *New Castle County v. Halliburton NUS Corp.*,111 F.3d 1116, 1126 (3d Cir. 1997); *Irwin v. Department of Veterans Affairs*,498 U.S. 89, 96 (1990). The Respondents proffer no evidence whatsoever that Petitioner filed any frivolous or serial petitions or sought to delay or hinder resolution of any of his prior appeals. Nor has prior counsel acting on Petitioner's behalf been less than reasonably diligently as evidenced by the fact that all his state court appeals were timely filed. (P3). [1]

Again, without providing any evidentiary support, the Respondents have averred that counsel

---

[1]      It should be noted that Bowers, Petitioner's co-defendant, is just now himself at the federal habeas level of appeal, having just completed two days of hearings on some claims which he and Petitioner had in common. If Petitioner's case had been "unduly delayed" it would not be essentially at the same stage of appeal as Bowers.

was already familiar with Petitioner's case and didn't need the time to review it because she had been ". . . working on his case for *more than a decade*." (emphasis in original)(Motion, pg. 7). That is simply <u>*not*</u> true. Counsel was retained for the first time on Petitioner's behalf and entered her appearance on or about June 24, <u>2013</u>. - *<u>three</u>* years ago.  (P1).

At that time, Ms. Himebaugh was retained on Petitioner's behalf <u>solely</u> in relation to the Supreme Court's remand for a hearing on two specific claims: 1) Was Mr. Siegel ineffective for not cross-examining Washington about her tumultuous relationship with Petitioner and her motivation to lie to inculpate him? and 2) Was Mr. Siegel ineffective for failing to call Thompson? In preparation for that hearing, counsel read the notes of testimony and the discovery generally to understand where those two claims fit in. Only those portions of the record that were relevant and necessary to the two claims were however reviewed in greater detail by counsel. No other claims were being raised so counsel had no reason to do any additional investigation or research as to any other claims at that time either.

The Supreme Court ultimately denied relief on March 25, 2015. The Respondents aver that Petitioner has not been pursuing his rights diligently because counsel had nine months from that date to file the amended habeas petition, and that in their opinion, that is more than enough time since counsel had already plead all the same claims during the state collateral appellate process. (Motion, pg. 7). This is also <u>*not*</u> true. Louis Natali, Esquire represented Petitioner in the original PCRA proceedings, not Ms. Himebaugh. (Motion, pg. 6).

Ms. Himebaugh was not re-retained on Petitioner's behalf for purposes of representation in federal court until April 3, 2015. [2] Ms. Himebaugh is a sole practitioner with a home office. [3] She has

---

2       While it is customary for criminal defense counsel, particularly in a capital case, to require payment in full up front before <u>*any*</u> work/new work is begun, Ms. Himebaugh agreed, specifically in order to avoid any delay and to be able to begin working on the habeas *as soon as possible*, to allow Petitioner to only pay a small portion ($1500 out of a total $3500) of the fee before work was begun. That payment was made on April 3, 2015. The balance was paid off in small monthly payments thereafter.

3       At any given time she has between 50 and 60 active criminal appeals cases pending.

no secretary or paralegal. During the material time period she had the part time assistance for one semester of a college intern. His role was, due to his lack of a formal legal education, limited to organizing the file and putting citations to the record in the factual statement of the habeas memorandum of law.

Believing that she had until December 31, 2015 to file the habeas petition, immediately upon being retained for the habeas proceedings, counsel began a comprehensive and detailed review of *all* of the case materials. This included detailed review of all of the discovery materials, notes of testimony from the pre-trial, trial, direct and PCRA proceedings, the briefs filed by both the Petitioner and Respondent on direct and PCRA appeal and all Opinions issued by the state courts. Counsel also reviewed the direct, PCRA and federal habeas petitions, briefs and Opinions for co-defendant Bowers to ascertain what issues were in common and what rulings had been made on those rulings by the state courts.

In *McFarland v. Scott*, 512 U.S. 849, 854(1994) U.S. the Supreme Court held that the right to counsel embodied in §848(q)(4)(B) (now 18 U.S.C. §3599) "necessarily includes a right for that counsel to research and present a defendant's claims" and be given sufficient time in which to accomplish that work.  512 U.S at 858. Given the complexity of capital litigation, in particular, a proper counseled capital habeas corpus petition can only be prepared after counsel has both reviewed the existing record and conducted an exhaustive extra-record investigation of the case. Id. Thus, in order to properly litigate capital cases, counsel needs – and is entitled to – time to do this research and investigation . See, e.g. *Riley v. Taylor*, 62 F.3d 86 (3rd Cir. 1995)(district court abused its' discretion when it denied habeas counsel six months to properly prepare and amend capital habeas petition).

As was her duty to her client, counsel  conducted an exhaustive extra-record investigation of the case. *Riley*, supra; *McFarland*, supra. This included, among other things recontacting or attempting to recontact several witnesses to re-interview them and speaking with Lou Natali, Esq (PCRA counsel) in

7

order to determine whether *Martinez v. Ryan* 132 S.Ct. 1309 (2012) could be applied to any meritorious claims that may have been raised by the Petitioner but abandoned by PCRA counsel in state court. It also included extensive investigation of potential claims that ultimately could not be presented. [4]

However, on July 30, 2015 (five months before the December 31, 2015 deadline) an execution order was issued. That meant that the habeas petition had to be filed significantly earlier than its statutory deadline, and much earlier than counsel had planned on, in order for the court to have jurisdiction to enter the stay. [5]

Never having had a case in this procedural posture before, counsel conferred with Shawn Nolan at the Federal Defenders about what to do. She was specifically instructed to file the habeas form/petition with the Grounds as: "Petitioner will identify the claims raised and exhausted in state court and his claims for relief in his forthcoming counseled habeas petition." Counsel thereupon filed a timely Motion for Stay of Execution which specifically asked for the Court's permission to file Petitioner's Writ of Habeas Corpus within 180 days of the date of the Order. The Order was granted on August 20, 2015.

In direct reliance on the Court's Order, counsel in good faith believed that the statute had been tolled and that the petition would relate back to the date of the original filing/be considered timely filed as it does in state court PCRA proceedings. After all, the Court had specifically Ordered the petition due two and half months *after* the statute had technically expired. If it was impossible or futile for such a petition to be considered timely, the Court should not have issued the Order with that due date. (P2) Thus, based on the Court's Order, the habeas corpus petition was not due until February 16, 2015.

---

4      One such claim was ineffective assistance of counsel related to lack of presentation of mitigation evidence, which could have been a highly meritorious claim. Counsel had discussed this claim with her client multiple times, She had obtained records and had her private investigator attempt to obtain necessary affidavits only to later learn that this claim can not be presented. Counsel would have however been ineffective for not undertaking this investigation.

5      Petitioner did not wait until the federal statute was about to expire to work on the case and/or file the petition as Petitioner did in *Lawrence v. Florida,* 549 U.S. 327, 336-37 (2007).

8

Counsel still had to conduct an extensive amount of legal research for federal authority for each potential claim to ensure its constitutional/legal merit and authority to be raised before and reviewed by the federal court on habeas review. [6] It was only when this was done that counsel could review all of the above with her client and confirm that he wished to raise the twenty-four (24) claims which were included in the federal habeas petition which was ultimately filed.

Recognizing that having twenty-four claims to properly and thoroughly brief was going to take literally hundreds of hours worth of work, counsel both asked for additional time to file the petition and retained (with the client's permission) another sole practitioner, Jennifer Tobin, Esquire to assist her in drafting the twenty- four claims. [7] Counsel and Ms. Tobin thereupon diligently worked on what became a 199 page memorandum of law in support of the habeas petition.

However, recognizing that the deadline for filing was rapidly approaching, on January 20, 2016 counsel asked for an additional 180 days to file the petition.[8] The Court granted this Motion, extending the deadline despite the statute of limitations having already technically expired on December 31, 2015. Again, in direct reliance on the extension of time expressly granted by the Court, counsel completed the petition and memorandum of law and sent it to her client to review and approve before filing as is her practice. This was well in advance of the new April 18, 2016 due date.

However, in March before she received any comments or corrections from Petitioner, counsel received the letter to the Court from the Respondents advising of the instant issue. In order to ensure

---

6       While counsel was familiar with much of the case law and had represented many individuals in federal habeas proceedings, this was only counsel's second capital case habeas and the first that she had done without the resources of the Federal Defenders. She did not have, as the Respondents do, the ability to draw upon up to date research already done by the large number of attorneys and paralegals at the DA's Office. In that the law often treats capital cases differently than other cases, counsel had to research all the claims, even those she was already generally familiar with as well.

7       Ms. Himebaugh paid Ms. Tobin a portion of her fee so that the client would not be prejudiced by the need for additional assistance.

8       Counsel fully intended on filing the petition long before this new deadline but asked for the time in an abundance of caution.

that there could not possibly be a claim of undue delay, counsel filed the PCRA petition the *day after* she received the letter from Respondents.

## 2) extraordinary circumstances prevented timely filing

By statute, Congress provided that a habeas petition "may be amended . . . as provided in the rules of procedure applicable to civil actions." 28 U.S.C. §2242. Federal Rule of Civil Procedure 15 pertains to amendments of pleadings. The purpose of Rule 15 "is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities. The liberality of Rule 15(a) counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case. *Foman v. Davis,* 371 U.S. 178, 181-182 (1962); *Boileau v. Bethlehem Steel Corp.,*730 F.2d 929, 938-39 (3d Cir. 1984). It allows for misunderstandings and good-faith lapses in judgment, so long as the party thereafter acts reasonably and diligently. See also, 6 Wright et al., supra, § 1488 (stating that leave should be granted if delay was due to "oversight or excusable neglect").

Fed.R.Civ.P.15(a)(1) allows a petitioner the right to file an amendment to the pleading *without* express leave of the Court one time, as a matter of course, before a responsive pleading is served. On the other hand, Fed.R.Civ.P.15(a)(2) requires the petitioner to obtain *express permission* from the Court to amend the pleading.

Petitioner sought leave from the Court to amend the initial, timely filed, habeas petition pursuant to Fed.R.Civ.P.15(a)(2). The Court expressly granted this Motion as well as a later Motion for additional time in which to file the amendment. Petitioner thus had express leave of Court to file an amended pleading with deadlines outside of the AEDPA statute of limitations. The Petitioner and his counsel relied in good faith on the Court's granting of these Motions.

While factual distinct, *United States v. Duffus,*174 F.3d 333 (3d Cir. 1999), *cert. denied*, 120 S. Ct. 163 (1999), is instructional. As in the case at bar, in *Duffus*, the District Court extended the habeas filing date beyond the AEDPA deadline to allow the petitioner to supplement his petition with 'new'

10

claims. However, *unlike our Petitioner*, Duffus waited six months (five months after the expiration of the AEDPA's time limit) and *without having received prior leave of the court*, filed the amended petition asserting the new claim. Based on Duffus' unexplained delay in presenting the amended pleading which contained the new claim, the Court held that the new claim was not timely filed and equitable tolling did not apply. Critically, Duffus filed the amended petition pursuant to Fed.R.Civ.P.15**(a)(1)** . Counsel in *Duffus* had not, as counsel in the case at bar has, specifically sought and received *advance permission* from the Court to amend the petition with a deadline that exceeded the AEDPA deadline pursuant to Fed.R.Civ.P.15**(a)(2).**

If it was going to be ultimately futile to file an amended pleading because the claims could not possibly be considered timely, this Court would not have granted the Motions in the first place. Courts are not in the practice of granting futile motions. The law provides that motions should not granted when there is evidence of undue delay, bad faith, undue prejudice to the opposition, repeated failures to correct deficiencies, or *futility* . (emphasis added) Fed. R. Civ. P. 15(a); *Riley v. Taylor*, 62 F.3d 86 (3rd Cir. 1995); *Foman,* supra; *Moore v. Balkcom*, 716 F.2d 1511, 1526 (11th Cir. 1983); *Bivings v. Wakefield*, 316 F. App'x 177, 180 (3d Cir. 2009); *Herrill v. Ricci*, 10-3575 (D.N.J. 03/28/16).

Moreover, the Court's Order was insufficient on its' face to put Petitioner on notice that he was waiving his constitutional right to file a timely federal habeas petition if the amendment was not filed before the statute expired. The Order issued by the Court granting Leave to Amend stated only that Petitioner's Motion was Granted and that Petitioner was to be given a certain amount of time (beyond the deadline) in which to file the amended petition. The Order did not state anywhere that the statutory deadline had not been tolled by the Order and that if the amendment was not filed by December 31, 2015 identifying each claim, those claims would be forever waived.

Justice Scalia opined in *Day v. McDonough*, 547 U.S. 198, 205 (2006) that the enactment of habeas time-limitation periods ". . . produces defenses that are non-jurisdictional and thus subject to

11

waiver and forfeiture." Waiver occurs only upon the "'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725,733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed 1461 (1938)). In the habeas context, many "waivers" will not actually have been "the result of a purposeful or deliberate decision to forego the defense." *United States v. Bendolph*, 409 F.3d 155 (3d Cir. 05/16/2005) (citing *Scott v. Collins*, 286 F.3d 906(2002) (Stafford, J., dissenting).

An Order granting leave to amend with due dates outside the statutory period, which omits the above cited explicit language, is not a knowing, intelligent and voluntary waiver by Petitioner or counsel on his client's behalf. The Order which was issued in this case was inherently insufficient on its face in that it mislead Petitioner and his counsel into believing, in good faith, that amended claims could be timely added to the pending petition. Were this Court to now grant the Respondent's Motion to Strike it would be affirming a practice which violates Petitioner's due process rights under the Fourteenth Amendment.

Moreover, if Petitioner did not have the right after being given express permission by the Court to amend the habeas petition to add what would be thereafter considered "timely filed" claims beyond the statutory period, then the holdings in *Duffy*, *McFarland* and *Riley* discussed above, have no practical or legal meaning or application. To rule any other way would be to arbitrary and capricious and would violate Petitioner's constitutional right to due process of law.

"(T)he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome. [9] *Foman v. Davis*, 371 U.S. 178, 182 (1962). This is *not* a

---

9        Over the last twenty eight years of practice counsel has handled many, many federal habeas petitions. She has been capital case certified since 2010 and has attended 38 hours (as opposed to the minimum requirement of only 18 hours) of capital case Continuing Legal Education. She has additionally taken multiple Continuing Legal Education courses on federal habeas corpus representation. Counsel has re-reviewed the CLE materials that came with the CLE courses to see if this specific timeliness issue was addressed and it does not appear that it was. Nor can she recall it being specifically addressed at any of the classes. Counsel has also not found any cases factually on

12

case of counsel having been mistaken, neglectful, or deleterious in filing the habeas petition beyond the AEDPA deadlines, as the Respondents would have this Court believe. (Motion, pg. 8). [10]

Based on the Court's granting of the request for an extension in which to file the amended petition, Petitioner's counsel believed in good faith that the claims that were to be raised in the amended petition would be considered by the Court to be timely filed. Counsel relied on the Court's Orders. Had counsel been made aware that, despite the Court's explicit Order, there was still a December 31, 2015 deadline to file an amended habeas form and petition, she would have ensured, one way or the other, that it was filed by that date. [11]

Moreover, even were this Court to somehow cast counsel's actions as negligent, this is Petitioner's *first* federal habeas proceeding, where even negligent action by counsel can be considered 'extraordinary circumstances' sufficient for equitable tolling. *Holland*, supra; *Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003) ; *Johnson v. Hendricks*, 314 F.3d 159, 163 (3d Cir. 2002); *Miller, supra*; *Schlueter v. Varner*, 384 F.3d 69, 76 (3d Cir. 2004) . [12]

The Supreme Court has told us that the " [d]ismissal of a first federal habeas petition is

fours with the instant case.

Counsel for the Respondent candidly admitted during the recent in chambers conference that the need to file the amended pleading before the statute runs even when the court has expressly granted permission to amend beyond the AEDPA statutory limit was not well known among the habeas defense bar and that the DA's Office had some prior concern that this could happen but did not do anything to bring it to the defense bars' attention. If the Court were to grant the Respondents Motion to Strike it would be essentially condoning the use of a "hidden trap"to preclude review of a capital habeas petition.

10    Respondent's reliance on *Lawrence*. supra is mislplaced in that the cases are factually and procedurally distinct. In the case at bar there was no 'miscalculation' of the deadline by counsel as there was in *Lawrence*, supra. In the instant case, the date for submission of the petition was established by the Court through its' Orders.

11    During her twenty eight years of practice, present counsel has *never* missed a statutory deadline or filed a petition or other document late. In fact, this was the only time she can recollect having had to file a second request for additional time to complete a petition in any court. Petitioner, through counsel, has always "exercised reasonable diligence in... bringing (the) claims." *Miller*, supra (quoting *New Castle County, supra*; *Irwin, supra.*

12    *Irwin*, supra (equitable tolling appropriate where claimant filed defective pleading during statutory period).

13

> a particularly serious matter, for that dismissal denies the petitioner the protections of the
> Great Writ entirely, risking injury to an important interest in human liberty." *Lonchar v.*
> *Thomas,* 517 U.S. 314, 324,116, S.Ct. 1293_ 1299, 134 L.Ed.2d 440 (1996). This is still
> true after AEDPA. Although " state courts are the principal forum for asserting
> constitutional challenges to state convictions," *Harrington v. Richter,* __ U.S. __,
> __, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011), the Supreme Court recently reaffirmed
> the " importance of federal habeas corpus proceedings as a method for preventing
> individuals from being held in custody in violation of federal law," *Trevino v. Thaler,* __
> U.S. __, __, 133 S.Ct. 1911, 1916-17, 185 L.Ed.2d 1044 (2013) (citing *Martinez v.*
> *Ryan,* __ U.S. __, __,132 S.Ct. 1309, 1315-16, 182 L.Ed.2d 272 (2012)). Thus, state
> prisoners on death row have a right to federal habeas review, and this right should not
> depend upon whether their court-appointed counsel is competent enough to comply with
> AEDPA's statute of limitations. See *generally Hutchinson v. Florida,*677 F.3d 1097,
> 1103-11 (11th Cir. 2012).

*Lugo v. Secretary, Florida Department of Corrections,* 750 F.3d 1198 (11th Cir. 04/24/2014) (Barkett,

J., concurring in result).

Moreover, this is a capital habeas petition and there are unique circumstances which the

interests of justice require application of equitable tolling. This is Petitioner's *only* chance at having his

claims of constitutional error heard by a federal court *before he is put to death.* Despite the

Respondents impassioned argument that capital cases should be treated just like any other case, the

reality is that the equitable considerations underlying a death penalty case are different than those in a

non-capital case. In *Merritt v. Blaine,*326 F.3d 157, 170 (3d Cir. 2003) the Third Circuit discussed the

distinction:

> The fact that *Fahy* was a death penalty case was the dispositive factor in that case, as we
> stated that, "[i]n a capital case ... the consequences of error are terminal, and we
> therefore pay particular attention to whether principles of 'equity would make the rigid
> application of a limitation period unfair'. . . In *Fahy,* we clearly limited the lower bar that
> we established for equitable tolling to capital cases and Merritt is not in that position.
> Although Merritt faces the grave penalty of mandatory life sentence without the
> possibility of parole, we cannot apply the rationale of *Fahy* to Merritt's situation. . .

Id.

As discussed above, counsel relied upon the Court's Order extending the deadline. There is no

case law that Respondent (the moving party) has cited to which holds that *under these facts* counsel

either did not have the right to rely on the Court's Ordered deadline and/or that the Court cannot grant

14

equitable tolling based on counsel's reliance on those Orders.

Equitable tolling in this case is demanded by sound legal principles as well as the interests of justice.'" *Schlueter v. Varner*, 384 F.3d 69, 75 (3d Cir. 2004) (quoting *Jones v. Morton*,195 F.3d 153, 159 (3d Cir. 1999)). To grant Respondents' Motion to Strike would irreparably prejudice and harm Petitioner and violate his constitutional rights. Petitioner, whose very life is on the line, should not be prejudiced by counsel's good faith reliance on the Court's Orders extending the filing deadline beyond the AEDPA deadline.

Furthermore, as discussed below and incorporated herein, Respondents will not be prejudiced by the grant of equitable tolling in that they had notice of the claims that Petitioner has raised. The Respondents have not yet responded to the amended petition which has been filed and can still respond and object to each of the claims raised by the Petitioner.

## II.     The claims are timely pursuant to Fed.R.Civ.P. 15(c) Relation Back of Amendments

Pursuant to Fed.R.Civ.P. 15(c),  an amendment of a pleading relates back to the date of the original pleading when. . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Mayle v. Felix*, 125 S.Ct. 2562, 545 U.S. 644, 162 L.Ed.2d 582 (U.S. 06/23/2005) [13] There can be no question in the instant case that the claims asserted in the amended habeas corpus petition which was filed, arose out of the very same "conduct, transaction or occurrence" - December 8, 1993 abduction and murder of Andrew Haynes. This was clearly indicated in the original pleading.

Moreover, Petitioner  qualifies for relation back under Rule 15(c) in that the Respondents were

---

13     The issue herein is the relation back of claims and not parties. The legal analysis is somewhat different but instructional for relation back of additional parties. *Singletary v. Pennsylvania Dep't of Corrs.*,266 F.3d 186,  193 (3d Cir. 2001) ; *Garvin v. City of Philadelphia*, 354 F.3d 215 (3d Cir. 12/31/2003) .

given fair notice of the amended claims and would not be prejudiced by their inclusion in the instant habeas petition. In the case at bar, Respondents have been consistently represented at each level of state court by the Philadelphia District Attorney's Office where each of these claims were identified and argued on their merits. The Philadelphia District Attorney had both actual and constructive notice of the claims and arguments that would be raised by the Petitioner in his habeas petition. In addition, the Philadelphia District Attorneys Office also represents Respondents in relation to co-defendant Bower's state and federal appeals. Many of the claims raised in the Petitioner's instant habeas petition were identical to claims raised by co-defendant Bowers in his federal habeas petition.

Pursuant to the "shared attorney" doctrine and the "identity of interest" doctrine, the attorneys within the DA's Office are so closely related in their business operations or other activities that the claims made in one proceeding serve to provide notice of the claims as to the other. Id. At 197 (Charles Alan Wright et al., Federal Practice & Procedure § 1499, at 146 (2d ed. 1990); *Singletary*, supra.

For all the above reasons, Petitioner avers that striking Petitioner's habeas corpus petition without review of the Petitioner's claims on their merits would be a fundamental miscarriage of justice and would violate Petitioner's constitutional rights under the Fourteenth Amendment. *Coleman v. Thompson*, 501 U.S. 722 (1991); *Barefoot v. Estelle*, 463 U.S. 880, 889 (1983).

Respectfully submitted,

Teri B. Himebaugh

Teri B. Himebaugh, Esq.
Attorney for Petitioner

16

## *CERTIFICATE OF SERVICE*

The undersigned counsel for Petitioner hereby certifies pursuant to Pa.R.A.P 121 and 18 Pa.C.S.

4904 that a true and correct copy of the attached Memorandum in Opposition to the Respondents'

Motion to Strike has been electronically filed and mailed this 23rd day of June, 2016 upon the

following:


U.S District Court Eastern District of Pennsylvania
601 Market St.
Clerk's Office 2nd Fl.
Philadelphia, PA 19106

Susan Affronti, Chief Federal Litigation
Assistant District Attorney for Philadelphia County
Three South Penn Square
Corner of Juniper and South Penn Square
Philadelphia, PA 19107-3499

Rasheed Simpson CT1781
175 Progress Drive
Waynesburg, PA 15370

Teri B. Himebaugh, Esq.

17